HYLE, APPELLEE, *v.* PORTER, APPELLANT.

[Cite as *Hyle v. Porter,* 117 Ohio St.3d 165, 2008-Ohio-542.]

(No. 2006–2187—Submitted October 10, 2007—Decided February 20, 2008.)

**MOYER, C.J.**

{¶ 1} The First District Court of Appeals found its judgment in this case to be in conflict with the judgment of the Second District Court of Appeals in *Nasal v. Dover,* 169 Ohio App.3d 262, 2006-Ohio-5584, 862 N.E.2d 571, and certified the record to this court for review and final determination. We determined that a conflict exists on the following issue: "Whether R.C. 2950.031—Ohio's residency-restriction statute prohibiting certain sexually oriented offenders from living within 1,000 feet of a school—can be applied to an offender who had bought his home and committed his offense before July 31, 2003 (the effective date of the statute)." 112 Ohio St.3d 1487, 2007-Ohio-724, 862 N.E.2d 115.

{¶ 2} We hold that R.C. 2950.031 does not apply to an offender who bought his home and committed his offense before the effective date of the statute. The judgment of the First District Court of Appeals is reversed.

I

{¶ 3} Appellant Gerry R. Porter Jr. was convicted of sexual imposition in 1995 and of sexual battery in 1999. The Court of Common Pleas of Hamilton County entered an order determining that Porter was a sexually oriented offender. Porter subsequently registered as a sexually oriented offender.

{¶ 4} In 2003, the General Assembly imposed residency restrictions on certain sexually oriented offenders through the enactment of R.C. 2950.031, later amended and recodified as R.C. 2950.034.[1] Former R.C. 2950.031(A) provides as follows: "No person who has been convicted of, is convicted of, has pleaded guilty to, or pleads guilty to either a sexually oriented offense that is not a registration-exempt sexually oriented offense or a child-victim oriented offense shall establish a residence or occupy residential premises within one thousand feet of any school premises." 150 Ohio Laws, Part IV, 6657.

{¶ 5} Following the enactment of former R.C. 2950.031, Francis M. Hyle, the chief legal officer of Green Township in Hamilton County, Ohio, initiated the current action against Porter. Hyle alleged that Porter had been convicted of a sexually oriented offense that was not registration-exempt and that Porter's residence in Cincinnati was within 1,000 feet of the premises of a school, in violation of R.C. 2950.031. Hyle sought a permanent injunction that would enjoin Porter from continuing to occupy his residence. Porter and his wife, Amanda Porter, had co-owned and lived in the house since 1991.

{¶ 6} The trial court permanently enjoined Porter from occupying his home. The First District Court of Appeals affirmed the trial court decision and held that R.C. 2950.031 could be applied to an offender who bought his home and committed his offense before the effective date of the statute. *Hyle v. Porter*, 170 Ohio App.3d 710, 2006-Ohio-5454, 868 N.E.2d 1047. Upon motion for reconsideration, and in response to the release of the decision in *Nasal v. Dover*, 169 Ohio App.3d 262, 2006-Ohio-5584, 862 N.E.2d 571, the court of appeals sua sponte certified its judgment as being in conflict with *Nasal*, and we agreed to resolve the conflict.

## II

{¶ 7} We are once again required to apply two provisions of Ohio law that limit the retroactive[2] application of statutes. The first is the rule of statutory construction, adopted in R.C. 1.48: "A statute is presumed to be prospective in its operation unless expressly made retrospective." See *Van Fossen v. Babcock Wilcox Co.* (1988), 36 Ohio St.3d 100, 105, 522 N.E.2d 489. The second is a rule of constitutional limitation, imposed in Section 28, Article II of the Ohio Constitution: "The general assembly shall have no power to pass retroactive laws * * *."

---

1. All references to R.C. 2950.031 in this opinion refer to the 2003 Am.Sub.H.B. No. 5 version of the statute.

2. The terms "retroactive" and "retrospective" may be used interchangeably to refer to a law that affects " 'acts or facts occurring, or rights accruing, before it came into force.' " *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 1, fn. 1 (quoting Black's Law Dictionary (6th Ed.1990) 1317).

See *Van Fossen,* id. A retroactive statute is unconstitutional if it retroactively impairs vested substantive rights, but not if it is merely remedial in nature. *State v. Consilio,* 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 9.

{¶ 8} In *Consilio,* we applied these two provisions in the form of a two-part test to determine whether a statute may be applied retroactively. Id. at ¶ 10. Under this test, we first ask whether the General Assembly expressly made the statute retroactive. Id. If it did, then we determine whether the statutory restriction is substantive or remedial in nature. Id. The first part of the test determines whether the General Assembly "expressly made [the statute] retroactive," as required by R.C. 1.48; the second part determines whether it was empowered to do so. *Van Fossen,* 36 Ohio St.3d at 106, 522 N.E.2d 489.

{¶ 9} We do not address the question of constitutional retroactivity unless and until we determine that the General Assembly expressly made the statute retroactive. Id.; *State v. LaSalle,* 96 Ohio St.3d 178, 2002-Ohio-4009, 772 N.E.2d 1172, ¶ 14; *Consilio,* 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 10. "[N]o constitutional question is ripe for judicial review 'where the case can be disposed of upon other tenable grounds.'" *Van Fossen,* 36 Ohio St.3d at 105, 522 N.E.2d 489, quoting *Ireland v. Palestine, Braffetsville, New Paris, & New Westville Turnpike Co.* (1869), 19 Ohio St. 369, 373.

{¶ 10} We therefore begin our retroactivity analysis with the question of statutory interpretation. Pursuant to R.C. 1.48, if the statute is silent on the question of its retroactive application, we must apply it prospectively only. *Doe v. Archdiocese of Cincinnati,* 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 40. In order to overcome the presumption that a statute applies prospectively, a statute must "clearly proclaim" its retroactive application. *Consilio,* 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, paragraph one of the syllabus. Text that supports a mere inference of retroactivity is not sufficient to satisfy this standard; we cannot *infer* retroactivity from suggestive language. Id.

{¶ 11} Two arguments are advanced in support of the proposition that R.C. 2950.031 was expressly made retroactive. Both concern the language of the statute. First, Hyle notes that the description of convicted sex offenders uses contrasting verb tenses, past and present: "No person who *has been convicted of, is convicted of, has pleaded guilty to, or pleads guilty to* [specified categories of sexual offenses] * * *." (Emphasis added.) Former R.C. 2950.031(A). Hyle argues that the use of these two contrasting verb tenses, including one in a form of the past tense, indicates that the statute applies to convictions before and after the effective date of the statute.

{¶ 12} Second, amicus curiae Attorney General of Ohio notes that the statute's description of prohibited acts includes the verb "occupy," which he argues denotes "continue to occupy": "No person * * * shall establish a residence or

occupy residential premises within one thousand feet of any school premises." In particular, the attorney general argues that the two different verbs in the above passage—"shall establish a residence" and "occupy residential premises"—denote two different prohibited activities, and that unless the term "occupy" is interpreted to mean "continue to occupy," the phrases "shall establish a residence" and "occupy residential premises" are redundant. The attorney general thus argues that the statute applies to an offender who purchased his home before the effective date of the statute as well as to an offender who purchased his home after the effective date of the statute.

{¶ 13} On review of the text of R.C. 2950.031, we find that neither the description of convicted sex offenders nor the description of prohibited acts includes a clear declaration of retroactivity. Although we acknowledge that the language of R.C. 2950.031 is ambiguous regarding its prospective or retroactive application, we emphasize that ambiguous language is not sufficient to overcome the presumption of prospective application. The language in R.C. 2950.031 presents at best a *suggestion* of retroactivity, which is not sufficient to establish that a statute applies retroactively.

{¶ 14} Two previous cases serve as examples of clear expressions of retroactivity and underscore the absence of a comparable declaration in former R.C. 2950.031.

{¶ 15} In *Van Fossen*, we based our finding of a clearly expressed legislative intent for former R.C. 4121.80 to apply retroactively on the following passage: "This section applies to and governs any action * * * pending in any court on the effective date of this section * * * notwithstanding any provisions of any prior statute or rule of law of this state." Former R.C. 4121.80(H), 141 Ohio Laws, Part I, 736–737. *Van Fossen*, 36 Ohio St.3d at 106, 522 N.E.2d 489.

{¶ 16} In *State v. Cook* (1998), 83 Ohio St.3d 404, 700 N.E.2d 570, our finding that the General Assembly specifically made R.C. 2950.09 retroactive was based in part on an express provision making the statute applicable to anyone who "was convicted of or pleaded guilty to a sexually oriented offense prior to the effective date of this section, if the person was not sentenced for the offense on or after" that date. Former R.C. 2950.09(C)(1), 146 Ohio Laws, Part II, 2620. Id. at 410, 700 N.E.2d 570.

{¶ 17} Both former R.C. 4121.80(H) and former 2950.09(C)(1) expressly make their provisions applicable to acts committed or facts in existence prior to their effective dates. In addition, R.C. 4121.80(H) expressly proclaimed its applicability in spite of contrary preexisting law by including the phrase "notwithstanding any provisions of any prior statute or rule of law of this state." Thus, both statutes include strong and unmistakable declarations of retroactivity.

{¶ 18} These examples demonstrate that the drafters of legislation know the words to use in order to comply with the Ohio Constitution and the requirement created by the General Assembly (R.C. 1.48).

{¶ 19} The text of R.C. 2950.031, by contrast, does not feature a clear declaration of retroactivity in either its description of convicted sex offenders or its description of prohibited acts. The statute does not proclaim its applicability to acts committed or facts in existence prior to the effective date of the statute or otherwise declare its retroactive application. In the present case, the absence of a clear declaration comparable to the two excerpted above precludes the retrospective application of R.C. 2950.031.

{¶ 20} An analysis of the text that Hyle advances as a declaration of retroactivity demonstrates its lack of clarity. First, in response to Hyle's argument regarding the use of a form of the past tense in the description of convicted sex offenders, we refer to our decision in *Kiser v. Coleman* (1986), 28 Ohio St.3d 259, 28 OBR 337, 503 N.E.2d 753. In *Kiser*, we held that there was no indication that two statutes were intended to have retroactive application, despite the fact that both used a form of the past tense. Id. at 261–262, 28 OBR 337, 503 N.E.2d 753.

{¶ 21} In particular, R.C. 5313.08, considered in *Kiser*, includes the following language: "If the contract *has been in effect* for less than five years, * * * the vendor may bring an action for forfeiture." (Emphasis added.) In addition, R.C. 5313.07, also considered in *Kiser*, includes the following language: "If the vendee of a land installment contract *has paid* * * * for a period of five years or more * * *, the vendor may recover possession of his property only by use of a proceeding for foreclosure." (Emphasis added.) Our decision in *Kiser* thus demonstrates that we have previously found similar language insufficient to overcome the presumption of prospective application.

{¶ 22} In addition, in response to the attorney general's argument that "occupy" denotes "continue to occupy" in the description of prohibited acts, we note two characteristics of R.C. 2950.031 that counter his argument and suggest prospective application. First, the description of prohibited acts is in the present tense: "shall establish" and "occupy." As we have previously noted, " '[a] statute, employing operative language in the present tense, does not purport to cover past events of a similar nature.' " *Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 17, quoting *Smith v. Ohio Valley Ins. Co.* (1971), 27 Ohio St.2d 268, 276, 56 O.O.2d 160, 272 N.E.2d 131. Second, the two verbs in the description of prohibited acts could reasonably denote two distinct, present-tense meanings. For example, "establish a residence" could mean "purchase and occupy a permanent home," and "occupy a residence" could mean "live in a temporary residence or occupy another's home." The language cited is therefore not a clear declaration of retroactivity.

{¶ 23} Hyle argues in the alternative that it was not necessary for the General Assembly to expressly state that R.C. 2950.031 applies retroactively. In particular, he argues that "R.C. Chapter 2950 as a whole supports the General Assembly's retroactive intent" and that without an express statement that a particular provision in that chapter applies prospectively only, the provision applies retroactively. Hyle's argument reverses the presumption codified in R.C. 1.48. The General Assembly is not required to specify the prospective nature of a statute. On the contrary, R.C. 1.48 provides that "[a] statute is *presumed* to be prospective in its operation *unless expressly made retrospective.*" (Emphasis added.) We therefore reject Hyle's argument that R.C. Chapter 2950 "as a whole" applies retroactively.

### III

{¶ 24} Our conclusion that R.C. 2950.031 was not expressly made retrospective precludes us from addressing the constitutional prohibition against retroactivity. *Van Fossen*, 36 Ohio St.3d at 106, 522 N.E.2d 489. We hold that because R.C. 2950.031 was not expressly made retroactive, it does not apply to an offender who bought his home and committed his offense before the effective date of the statute. The judgment of the court of appeals is reversed.

*Judgment reversed.*

PFEIFER, LUNDBERG STRATTON, LANZINGER, and CUPP, JJ., concur.

O'CONNOR, J., concurs in judgment only.

O'DONNELL, J., dissents.

---

**O'DONNELL, J., dissenting.**

{¶ 25} Respectfully, I dissent. A plain reading of the language of former R.C. 2950.031(A) reveals the intent of the legislature that it should be applied retroactively and that it is a remedial, not a substantive, enactment. Thus, it is constitutional and prevents a person who has been convicted of, is convicted of, has pleaded guilty to, or pleads guilty to a sexually oriented offense or a child-victim oriented offense from either establishing or occupying residential premises within 1,000 feet of a school.

### *Retroactive Application*

{¶ 26} Former R.C. 2950.031, now amended and recodified at R.C. 2950.034, provided, "(A) No person who has been convicted of, is convicted of, has pleaded guilty to, or pleads guilty to either a sexually oriented offense that is not a registration-exempt sexually oriented offense or a child-victim oriented offense

shall establish a residence or occupy residential premises within one thousand feet of any school premises." 150 Ohio Laws, Part IV, 6657.

{¶ 27} Statutes are presumed to be prospective in application. R.C. 1.48. Because of this presumption, as we stated in *State v. Cook* (1998), 83 Ohio St.3d 404, 410, 700 N.E.2d 570, a statute does not apply retroactively "unless there has been a prior determination that the General Assembly specified that the statute so apply." Id., citing *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph one of the syllabus. See also *In re Seltzer* (1993), 67 Ohio St.3d 220, 224, 616 N.E.2d 1108, which stated, " ' "It is a well settled rule of law that statutes should not receive a retroactive construction, unless the intention of the legislature is so clear and positive as by no possibility to admit of any other construction." ' " Id., quoting *Cincinnati v. Seasongood* (1889), 46 Ohio St. 296, 304, 21 N.E. 630, quoting *Houston v. McKenna* (1863), 22 Cal. 550, 554. Furthermore, in *State v. Consilio,* 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, paragraph one of the syllabus, this court held that the presumption of prospective application may not be overcome by ambiguous statutory language or by an *inference* that the General Assembly intended retroactive application.

{¶ 28} However, we have never required the General Assembly to recite talismanic phrases or magic words when expressing its intent for a statute to be applied retroactively. Instead, as we stated in *Consilio,* "[t]he Constitution requires the General Assembly to write statutes in such a way that people of common intelligence may understand what conduct is required." 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 23, citing *State v. Williams* (2000), 88 Ohio St.3d 513, 532, 728 N.E.2d 342. We emphasized there that "[r]equiring the General Assembly to clearly enunciate its intent in plain terms allows casual readers of the law to immediately know what statutes are retroactive." Id. Thus, in determining legislative intent regarding retroactive statutory application, we apply long-standing rules of statutory construction.

{¶ 29} In *State ex rel. Russo v. McDonnell,* 110 Ohio St.3d 144, 2006-Ohio-3459, 852 N.E.2d 145, ¶ 37, we stated that "[i]n order to determine [legislative] intent, we must ' "read words and phrases in context according to the rules of grammar and common usage." ' " Id., quoting *State ex rel. Cincinnati Bell Tel. Co. v. Pub. Util. Comm.,* 105 Ohio St.3d 177, 2005-Ohio-1150, 824 N.E.2d 68, ¶ 27, quoting *State ex rel. Lee v. Karnes,* 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 23; see also R.C. 1.42. This court further explained in *Sharp v. Union Carbide Corp.* (1988), 38 Ohio St.3d 69, 70, 525 N.E.2d 1386, "[w]here a particular term employed in a statute is not defined, it will be accorded its plain, everyday meaning." Id., citing *State v. Dorso* (1983), 4 Ohio St.3d 60, 62, 4 OBR 150, 446 N.E.2d 449; see also *State v. Reeder* (1985), 18 Ohio St.3d 25, 26–27, 18 OBR 21, 479 N.E.2d 280, quoting *Mut. Bldg. & Invest. Co. v. Efros* (1949), 152 Ohio St.

369, 40 O.O. 389, 89 N.E.2d 648, paragraph one of the syllabus, and citing *Youngstown Club v. Porterfield* (1970), 21 Ohio St.2d 83, 86, 50 O.O.2d 198, 255 N.E.2d 262 ("The courts however will assume the legislature is using a word in its ordinary meaning and our task is to accord ' * * * its common, ordinary and usually accepted meaning in the connection in which it is used * * *.' " [Ellipsis sic.] )

{¶ 30} The language used in former R.C. 2950.031 demonstrates that the General Assembly intended the statute to apply retroactively. First, the statute specifically identified the individuals to whom it applies: an individual "who *has been convicted* of * * * [or] *has pleaded* guilty to * * * either a sexually oriented offense * * * or a child-victim oriented offense," and an individual who "*is convicted* of * * * or *pleads* guilty to either" of the designated sexual offenses. (Emphasis added.) Thus, the statute applies to persons classified as sexually oriented or child-victim oriented offenders who have already been convicted of the offenses in the past as well as those who are convicted of or plead guilty to such offenses on or after the date of the legislation. This language expressly sets forth the intent of the legislature in this regard.

{¶ 31} In corresponding fashion, former R.C. 2950.031 stated that sexually oriented or child-victim oriented offenders "shall [not] *establish* a residence or *occupy* residential premises within one thousand feet of any school premises." (Emphasis added.) The words "establish" and "occupy" have different meanings and convey the notion that these prohibitions apply not only to the future conduct of offenders, but also to the behavior of such persons who are presently living in a residential premises located within 1,000 feet of a school premises. The word "establish," as defined in Black's Law Dictionary (8th Ed.2004) 586, means, inter alia, "to bring about or into existence." See also Webster's Third New International Dictionary (1986) 778, which provides that "establish" means "to place, install, or set up in a permanent or relatively enduring position esp. as regards living quarters," and "to bring into existence, create, make, start, originate, found, or build." In the context of former R.C. 2950.031, these definitions relate to an action that may occur in the future; thus, the use of this word is prospective in nature.

{¶ 32} The word "occupy," however, has a different connotation and means "to reside in as an owner or tenant" or "to hold possession of." Webster's Third New International Dictionary (1986) 1561. Although Black's Law Dictionary does not define the word "occupy," it provides further illumination from its definitions of the words "occupancy" ("the act, state, or condition of holding, possessing, or residing in or on something"), "occupant" ("[o]ne who has possessory rights in, or control over, certain property or premises"), and "occupation" ("[t]he possession, control, or use of real property"). Id. at 1108 and 1109. It is

obvious from these definitions that the word "occupy" describes conduct that has already commenced and that is presently occurring; the term refers to a presently existing state rather than conduct to be engaged in at a future time.

{¶ 33} The role of the judiciary is to interpret statutes and give meaning to every word used by the legislature. If the General Assembly had intended only to prohibit individuals from establishing a residence within 1,000 feet of a school after its adoption of this statute, it did not need to also prohibit those individuals from occupying residential premises—but it did so. As emphasized in *E. Ohio Gas Co. v. Pub. Util. Comm.* (1988), 39 Ohio St.3d 295, 299, 530 N.E.2d 875, it is "a basic rule of statutory construction—that words in statutes should not be construed to be redundant, nor should any words be ignored." Id., citing 50 Ohio Jurisprudence 2d (1961) 207, Statutes, Section 227. The General Assembly, in choosing to prohibit both the establishment of a residence and the occupation of a residential premises, intended to preclude present and future conduct regarding the location of a residence of persons described in this statute; and it did so by using language to preclude both establishing a residence and occupying one.

{¶ 34} No inference of retroactive intent is necessary in this context; here, in plain terms, former R.C. 2950.031(A) expressed the General Assembly's intent to prohibit a sexually oriented or child-victim oriented offender not only from *establishing* a residence within 1,000 feet of a school but also from continuing to *occupy* any such residential premises. Accordingly, this statute applies retroactively to individuals such as Porter, who established a residence within the proscribed distance from a school before the enactment of this statute, and who occupies that residence.

### R.C. 2950.031(A) Is Remedial and Not Substantive

{¶ 35} Not all retroactive legislation offends Section 28, Article II of the Ohio Constitution. See, e.g., *Rairden v. Holden* (1864), 15 Ohio St. 207, 210–211; *Cook,* 83 Ohio St.3d at 410, 700 N.E.2d 570; *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, 353, 721 N.E.2d 28. If the legislature has expressed its intent for a statute to apply retroactively, then, as we stated in *Bielat,* "the court moves on to the question of whether the statute is substantive, rendering it *unconstitutionally* retroactive, as opposed to merely remedial." (Emphasis sic.) Id. at 353, 721 N.E.2d 28, citing *Cook* at 410–411, 700 N.E.2d 570.

{¶ 36} In *Smith v. Smith,* 109 Ohio St.3d 285, 2006-Ohio-2419, 847 N.E.2d 414, we explained, "A substantive statute is one that 'impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction.'" Id. at ¶ 6, quoting *Bielat,* 87 Ohio St.3d at 354, 721 N.E.2d 28. Remedial legislation, on the other hand, affects "the methods and procedure by which rights are recognized, protected and enforced,

not * * * the rights themselves." *Weil v. Taxicabs of Cincinnati, Inc.* (1942), 139 Ohio St. 198, 205, 22 O.O. 205, 39 N.E.2d 148. Furthermore, as stated in *Bielat*, 87 Ohio St.3d at 354, 721 N.E.2d 28, remedial laws " 'merely substitute a new or more appropriate remedy for the enforcement of an existing right.' " Id., quoting *Cook*, 83 Ohio St.3d at 411, 700 N.E.2d 570.

{¶ 37} In *Cook*, we considered whether statutes requiring sexual offenders to register and verify their addresses with law enforcement could be applied retroactively to individuals who had been adjudicated as sexual offenders before the enactment of those statutes. After concluding that the General Assembly intended retroactive application, we specifically acknowledged the General Assembly's findings in support of R.C. Chapter 2950, which included the determination that "[s]exual predators and habitual sexual offenders pose a high risk of engaging in further offenses even after being released from imprisonment, * * * [and] protection of members of the public from sexual predators and habitual sexual offenders *is a paramount governmental interest.*" (Emphasis added.) Former R.C. 2950.02(A)(2), quoted at 83 Ohio St.3d at 416, 700 N.E.2d 570. On this basis, we held that "the registration and address verification provisions of R.C. Chapter 2950 are *de minimis* procedural requirements that are necessary to achieve the goals of R.C. Chapter 2950" and, therefore, that they "are remedial in nature and do not violate the ban on retroactive laws set forth in Section 28, Article II of the Ohio Constitution." Id. at 412 and 413, 700 N.E.2d 570.

{¶ 38} Here, former R.C. 2950.031 serves the same remedial goals that the General Assembly had when enacting R.C. Chapter 2950 and that we recognized in *Cook*. See current R.C. 2950.02(A)(2). Presumably, the purpose for creating a 1,000–foot radius around school premises is to protect children from the risks posed by sexually oriented and child-victim oriented offenders, which is a paramount government interest. Such legislation does not create or impair any substantive rights in either the child or the offender; rather, it provides a remedy to protect the health, safety, and welfare of children, parents, and the public. Moreover, this remedial purpose outweighs whatever right a sexually oriented or child-victim oriented offender has to continue to occupy a residence within the statutorily proscribed perimeter around a school facility, and as we stated in *State ex rel. Matz v. Brown* (1988), 37 Ohio St.3d 279, 282, 525 N.E.2d 805, "felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation."

{¶ 39} Some argue that this legislation denies sexually oriented and child-victim oriented offenders a fundamental right; this view fails to recognize that certain convicted felons also are precluded from exercising numerous rights that may be considered fundamental, such as the right to vote and the right to possess a firearm. See R.C. 2961.01(A) and 2923.13(A)(2). Here, the paramount concern

is protection of the public from the risks posed by sexually oriented and child-victim oriented offenders, and this remedial legislation is both appropriate and constitutional.

{¶ 40} Accordingly, because the General Assembly expressed its intent that this legislation be retroactive, and because this statute is remedial rather than substantive, its retroactive application to offenders such as Porter does not violate Section 28, Article II of the Ohio Constitution. For these reasons, I respectfully dissent.

---

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Paula E. Adams, Assistant Prosecuting Attorney; Hyle & Mecklenborg Co., L.P.A., and Robert P. Mecklenborg, for appellee.

Ohio Justice & Policy Center, David A. Singleton, and Stephen JohnsonGrove, for appellant.

Rosenthal Institute for Justice, University of Cincinnati College of Law, and Jenny E. Carroll, urging reversal for amici curiae Iowa County Attorneys Association, Iowa Coalition Against Sexual Assault, Iowa State Sheriffs & Deputies Association, Jacob Wetterling Foundation, and Association for the Treatment of Sexual Abusers.

Jeffrey M. Gamso, urging reversal for amici curiae American Civil Liberties Union of Ohio Foundation, Inc. and Ohio Association of Criminal Defense Lawyers.

Marc Dann, Attorney General, William P. Marshall, Solicitor General, Stephen P. Carney, Deputy Solicitor, and Frank M. Strigari, Assistant Attorney General, urging affirmance for amicus curiae Attorney General of Ohio.